## Shatz Realty Company v. King.

(Decided October 23, 1928.)

### Appeal from Jefferson Circuit Court (Common Pleas Branch).

1.   Brokers.—Generally, a real estate agent must act in compliance with instructions of his principal and in accordance with customs prevailing in community where he carries on his business.

2    Brokers.—Real estate agent is bound to exercise reasonable skill and diligence in transaction of business which is intrusted to him, and on his failure to exercise ordinary care in obtaining tenant and to make reasonable investigation as to character of person desiring to become tenant, and as result tenant enters property who was not fit person and damage results by reason of acts of tenant, agent will be responsible to owner for such damage.

3.   Appeal and Error.—In action by owner against real estate agent for damages to house by tenant to whom house was rented by agent, conflicting evidence as to whether owner agreed to accept tenant withou tinvestigation on part of agent, and whether owner made contract with agent to rent property, held to make jury's finding against agent conclusive.

4.   Appeal and Error.—In action by owner against real estate agent for damages to house caused by unfit tenant, to whom house was alleged to have been rented by agent without reasonable investigation of tenant's fitness, admission of evidence as to condition of property some months after tenant had left held not prejudicial error, in view of evidence that property was in good condition when tenant took possession and absence of proof that vandals or thieves damaged property after tenant vacated it.

5.   Brokers.—In action by owner against real estate agent for damages to house by undesirable tenant, to whom agent was alleged to have rented house without reasonable investigation; where contract in regard to rental of property was alleged to have been oral, written contract between parties authorizing agent to sell property held properly excluded.     :

6.   Trial.—In action by owner of house against real estate agent for damages caused by undesirable tenant, to whom agent was al-

leged to have rented house without reasonable investigation, instruction as to damages caused by vandals or thieves, or by some person other than tenant, held properly refused, where there was no evidence justifying such instruction.

HAGAN & MAX for appellant.

MORTON K. YONTS for appellee.

OPINION OF THE COURT BY JUDGE LOGAN—Affirming.

The appellant, Louis Shatz, is engaged in the real estate business in the city of Louisville under the trade-name Shatz Realty Company. The appellee, Delia King, in 1926 was the owner of a certain house and lot located at No. 117 West Kentucky street in that city. In December of that year, she went to the appellant and listed her house with him for sale, and at the time she signed the usual contract required by real estate agencies when property is placed with them for sale. At the same time according to her contention, she made an oral contract with appellant whereby he undertook to procure for her a suitable and proper tenant for her house and premises. He was to collect the rents and otherwise act as agent of appellee in leasing and renting the property. Soon after the making of this contract, she moved away from Kentucky to another state, where she and her husband resided for several months. When she returned to Louisville, she discovered that her property had been seriously damaged by the acts of a tenant that she claims was procured for her by the appellant while acting as her agent.

She instituted suit against appellant, in which she set out the foregoing facts, and, in addition, she alleged that appellant rented her property to a woman by the name of Frey, and that in so doing he rented the property and premises to an undesirable, unsuitable, and unfit tenant without making any investigation as to the character, standing, or reliability of such tenant, and that he was grossly negligent in making the rental contract with the Frey woman without making any investigation as to whether she was a fit and proper person as a tenant. Appellee alleges in her petition, that the Frey woman was an undesirable, unsuitable, unfit and improper tenant of the house and premises, and that when she entered into the possession of the house and premises she used the property in a reckless, careless, wanton, and destructive manner, and in such way as to inflict upon the prop-

erty and premises damages which are specifically enumerated in the petition. The damages consisted of broken lights, holes bored in the doors, window panes broken, sections of pipe removed, window cords cut, escutcheon removed from front door, carpets damaged and removed from floors, basement locked up so that egress and ingress were prevented, liquor stains on floors, doorbells and wiring torn out, lead pipe removed, heater injured and destroyed, protection strips torn from stairways, Brussels carpet gone, plumbing attachments and equip·ment broken and destroyed, and divers other injuries of a similar kind and nature. She alleges, in her petition, that the injury and damages to her property was caused by the negligent failure of the appellant to exercise reasonable care and diligence in the selection of a suitable, proper, and fit person to use and occupy the premises, and that her damage amounted to $2,000.

The first paragraph of the answer of appellant is a traverse. In the second paragraph it is alleged that, before the person referred to in the petition was allowed to become a tenant of the property, appellant notified appellee that the tenant could not give any satisfactory references as to her reliability as a suitable or proper tenant, and that she was further notified by appellant that he knew nothing as to the character, reliability, or responsibility of the Frey woman; but notwithstanding this information conveyed to the appellee, she instructed appellant to accept the person as a tenant of the premises, and that she therefore became the tenant of appellee entirely and solely under the orders and instructions of the appellee. He further alleged that he did not secure said tenant, or assume any responsibility for her, and that she was placed in the possession of the property through the direct instructions of appellee. The affirmative matter in the answer was controverted by a reply.

There was a trial before a jury, which resulted in a verdict in favor of appellee for $1,000. A motion for a new trial was overruled, and the case is before us for review.

Counsel for appellant do not seriously deny that he is responsible to appellee in damages if she employed him as her agent to rent the property and he negligently procured a tenant that caused the damages alleged in the petition. A motion was made for an instruction directing the jury to return a verdict for appellant, and complaint is made that the court failed to sustain the motion.

It is the general rule that a real estate agent must act in compliance with the instructions of his principal, and in accordance with customs prevailing in the community where he carries on his business. He is bound to exercise reasonable skill and diligence in the transaction of the business which is intrusted to him, and he will be responsible to the owner of the property for any loss resulting from his failure to exercise ordinary care in obtaining a tenant. He is only held to the exercise of ordinary care, and this would require him to make a reasonable investigation as to the character of the person who desired to become a tenant of his principal's property. If he makes such a reasonable inquiry and investigation, he is not bound for any loss to his principal occasioned by the misuse of the property by the tenant. But if he should fail to make such a reasonable investigation, and as a result of his failure a tenant should enter the property who was not a fit person to occupy the property, and damage should result to the property by reason of the acts of such a tenant, the agent will be responsible for such damage as was occasioned by his negligence. He is not a guarantor that the tenant is a suitable person to occupy the property, and when he has made a reasonable investigation and has acted in good faith believing the tenant is a suitable person to occupy the property, he cannot be held for any damage to the property by reason of the wrongful acts of the tenant. The agent owes to his principal to use such skill as may be requisite to accomplish the object of his employment, and he must be faithful to the interest of his employer. If he omits to exercise reasonable diligence and judgment, and as the result of such failure his principal is damaged, he may be held responsible for such damage. He must exercise the same diligence and good faith that a reasonably prudent man would exercise in renting the property if it were his own.

It is admitted by the appellant in this action that he made no investigation as to the character, fitness, or reliability of the tenant. He denies that he secured the tenant, or that he assumed any responsibility for her acts. He maintained this position both in his pleadings and in his testimony. It stands admitted that he made no investigation, and if there was evidence sufficient to justify the jury in finding that he secured the tenant under a contract with appellee, he is responsible to appellee for any damages which were occasioned her by reason of his negligence.

The evidence is convincing that the woman to whom the house and premises were rented was not a law-abiding citizen, and that she made the house a rendezvous for bootleggers and other lawless associates. She resided in the property for two or three weeks, and at the end of that period the place was raided by federal prohibition officers and she and her associates were arrested. She executed a bond immediately after her arrest, and, so far as the record discloses, she occupied the premises for the month for which she paid rent.

It is in the evidence that the house and furniture were in good condition when she took possession of the property, and that the house was "wrecked" during her occupancy, to use the expression of some of the witnesses. There can be no doubt that the premises were left in a deplorable condition. It would take up too much space to detail item by item the damage which was done, but it is sufficient to say that the proof abundantly supports the verdict of the jury, and there can be no just complaint on that score.

When appellee was preparing to leave the city to go to her husband in Michigan, she testified that she went to appellant because of information she had received that he sold more real estate than any other firm in the city. She signed a written contract authorizing appellant to sell the property. She testified that on the same day she placed her property in the hands of appellant to procure for her a tenant, and that appellant agreed with her that he would obtain for her property a suitable tenant; collect the rents, and look after the property. This is denied by appellant. She testified that she was notified by one of the employes of appellant that a tenant had been obtained, which is also denied by appellant. Appellant offered evidence that the rental contract was made with the Frey woman by appellee in person, and that it was directly under the instructions of appellee that the tenant was placed in possession of the property. This was denied by appellee. On the question as to whether appellee made a contract with appellant to rent the property, the evidence is conflicting, as it is on the question as to whether appellee agreed to accept the tenant without investigation on the part of appellant, and as the jury accepted the version of appellee, rather than that of appellant and his witnesses, the points are concluded against the contention of appellant.

The first error relied on by appellant is that the court admitted incompetent evidence to his prejudice. This evidence relates to the condition of the property some months after the tenant had left the property. We have examined the evidence with care, and have reached the conclusion that no prejudicial error was committed in the admission of this evidence. It is true that some witnesses who testified did not see the condition of the property until some months after the tenant had left, but there was evidence that the property was in good condition when the tenant took possession of it, and these witnesses did not attempt to testify as to the condition of the property at that time, but they did testify to the condition of the property at the time they saw it. If it was in good condition, as was proven, when the tenant took possession of it, the witnesses were competent to testify on that assumption as to the damage which had been done to the property. But it is insisted that the property was vacant for some time and was exposed to vandals and thieves. There is no proof that vandals or thieves invaded the property, or in any way changed its condition. It is also in proof that after the tenant left, and after the appellee had directed appellant to turn the property over to another real estate agent, he refused to do so for some time because he claimed that appellee was indebted to him in the sum of about $3. Moreover, there are a number of witnesses who saw the property at the time the federal prohibition officers raided the premises, and they testified to facts sufficient to show that great damage had been done between the time that the tenant entered the property and the time when she was arrested. We find no merit in the contention that prejudicial error was committed by the court in the rulings on the admission of this evidence.

Another point relied on by appellant is that the court refused to allow the admission in evidence of the contract signed by the appellee authorizing the appellant to sell the property. The action is not based on that contract, but the basis of the action is that the appellee entered into an oral contract with appellant in regard to the rental of the property. The written contract relating to the sale of the property could have thrown no light on the question as to whether appellee entered into an oral contract with appellant in regard to the rental of the property. The two things are separate and distinct. The fact that she made a written contract for the sale of the

property would in no wise contradict her statement that she made an oral contract for the rental of the property.

We have disposed of the contention made by appellant that he was entitled to a peremptory instruction. It is argued that the evidence did not establish the contract as claimed by appellee. The fact that appellant collected the first month's rent and remitted it to appellee after deducting his commission, the further fact that he wrote letters to appellee which appear to admit that he was looking after the property, and the further fact that he refused to turn over the key until he was paid a small sum which he claimed he had incurred as expenses in looking after the property, are circumstances corroborating the appellee in her statement that appellant agreed to look after her property and rent it for her.

Complaint is made about the instructions, but the instructions fairly and carefully submitted the issues in the case. The chief complaint about the instructions is that they allowed the jury to find for appellee if they believed that the Frey woman damaged the property. The basis of the complaint is that there is no proof that she damaged the property, and that issue should not have been submitted to the jury. The proof is that the property was in good condition when she took possession of it, and that it was a "wreck" when she left it. It is also insisted that the court erred in the instructions, because they tend to make the agent an insurer of the suitability of the tenant. That complaint is not justified. Appellant admits, in his brief, that the general rule is that, when an agent is selected to perform a certain duty, he must use ordinary care in the performance of his duty as such agent, and the court, by the instructions, required no higher duty than appellant admits that he owed. It is suggested that the Frey woman remained on the premises no longer than January 1, 1926, and that the instructions allowed a recovery for damages which may have been caused thereafter. The evidence appears to be silent as to whether she remained on the premises after her arrest, and the presumption would be that she remained for the period for which she had paid her rent. At all events, the appellant was in charge of the property for some time thereafter, and the instructions are not subject to attack on this ground. It is also insisted that the court should have given an instruction to the effect that if damage was caused by vandals or thieves, or by some person other than the tenant, the jury should re-

turn a verdict for the appellant.   There was no evidence justifying such an instruction.

The burden of real estate agents should not be made unduly heavy, but this is an extreme case where the agent admits that he made no investigation and had no reason to believe that the tenant was a suitable person to occupy the premises.   In such a case, where the tenant turns out to be such as this one was, he should be made to respond in damages to his principal if the tenant misuses the property in such a way as to damage it.

Judgment affirmed.